U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 3 1 2015

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHANDAR BINGHAM,<br>　　Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:12-CV-00479 |
| VERSUS | |
| WARDEN MENIFEE,[1] et al.,<br>　　Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a verified complaint filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, in forma pauperis, by pro se plaintiff Chandar Bingham ("Bingham") on February 22, 2012 and amended on November 9, 2013 (Docs. 1, 13). The sole remaining defendant is the United States of America[2] (Doc. 13). Bingham alleges that several correctional officers at USP-Pollock engaged in criminal activity and allowed certain inmates (referred to as "shot callers") to run the prison, thereby creating an unsafe environment for Bingham when he was incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock") from 2006-2010. Bingham contends that, due to that unsafe environment and the officers' negligent failure to protect him, he

---

[1] Warden Menifee's name is misspelled in the original complaint and on the docket as "Mannifee."

[2] Bingham voluntarily dismissed the other defendants named in his original complaint (Doc. 1).

was assaulted and stabbed by inmate Cmanuel Christopher. Bingham also contends he was denied medical and mental health care at USP-Pollock after the assault. Bingham contends that, as a result of Christopher's assault, Bingham was convicted of fighting and lost good time credits.

For relief, Bingham asks for a jury trial, monetary damages, medical care, reduction of his security classification, restoration of his good time credits,[3] a medical pass for an extra sleeping mattress, and costs (Doc. 13).

Defendants answered the complaint (Doc. 19) and filed a motion to dismiss or for summary judgment (Doc. 24) with a statement of undisputed facts, an affidavit and certified records from the Bureau of Prisons ("BOP"). Bingham filed an opposition to defendants' motion with an affidavit and documentary evidence (Doc. 29)

### Factual Allegations

Bingham contends that, while he was incarcerated in USP-Pollock from 2006 through 2010, USP-Pollock was rife with corruption, violence, assaults, trafficking and murders by both inmates and staff, and that gangs took over the prison. Bingham contends that prison guards assisted gangs with narcotics and contraband and leaked security information to them, and that the

---

[3] Bingham does not directly challenge his disciplinary proceedings, although he asks for restoration of his good time credits.

guards designated "shot callers" or leaders among the inmates, who operated by force and threats (Doc. 13). Bingham contends the prison staff and shot callers discussed and negotiated inmate security, including deciding which inmates remained in general population and which were sent to the SHU, under the stewardship of Captains Marquis and Wingo (Doc. 13). Bingham contends that, as a result, some inmates were given immunity from disciplinary consequences (Doc. 13).

Bingham contends he was stabbed multiple times in the face, head and back by inmate Cmanuel Christopher, who trafficks in narcotics and tobacco, is a member of a gang of inmates from Tennessee, and has a history of attacking other inmates with weapons. Bingham contends that, in about June 2010, before Christopher attacked him, he received warnings of an imminent attack by an unnamed inmate from Correctional Officer Thompson and an unknown SIS officer, but they did not give him any specific details. Bingham contends that, in about August 2010, a confrontation between himself and Christopher occurred in housing unit A-4, after which only Bingham was taken into custody for several hours by the staff, then released back into the housing unit. Bingham contends that no investigation, interviews or precautionary measures were taken by correctional officers to assure his safety (Doc. 13). Bingham contends that, when Bingham returned to the housing unit, he was surrounded by members of the

Tennessee gang led by Christopher when a count time announcement ordered inmates to return to their cells (Doc. 13). Bingham contends that, when he returned to his cell, Christopher followed Bingham into his cell and stabbed him multiple times before Bingham was able to force Christopher out (Doc. 13). Bingham contends there was an officer present who saw what took place both before and after Christopher stabbed Bingham, but he did not intervene; other officers were apparently notified and arrived to stop the assault (Doc. 13).

Bingham contends he and Christopher were both found guilty of the disciplinary violation of fighting, Christopher was released back into general population, and Bingham was transferred to the United States Penitentiary in Coleman, Florida (Doc. 13). Bingham contends he appealed the incident report, was given two more hearings, the incident report was rewritten a year later, and the video of the incident was available for the first hearing but gone when he appealed (Doc. 13).

Bingham contends he was denied medical care after the attack, initially by PA-C B. McCurdy and the Clinical Director (Doc. 13). Bingham contends he now suffers from back pain and psychological damage, and that his athletic ability[4] is greatly diminished due to a loss of motor movement, natural feel and reaction (Doc. 130).

---

[4] Bingham contends he used to be a professional basketball player in countries other than the USA.


Bingham contends that USP-Pollock officials, including Officers Beemon, Pennywell, and Wilks, broke criminal laws of the United States through distribution of marijuana, distribution of heroin, distribution of cocaine, and racketeering in tobacco, wireless devices, and other contraband in violation of 18 U.S.C. § 1791 (Doc. 13). Bingham contends that, in breaking these laws, the prison officials failed to uphold their duty to protect the inmates from a substantial risk of harm and, as a result, Bingham was injured. Bingham further contends that, when Captains Marquis and Wingo overlooked the crimes of the "shot-callers," they created a substantial risk of harm to Bingham and other inmates (Doc. 13). Bingham contends that, although they were aware of the threats against Bingham, prison officials such as SIS Officer Garr and Corrections Officer Thompson did not take any reasonable measures to protect him (Doc. 13). Bingham contends that Officer W. Kirk failed to protect Bingham from Christopher's assault by preventing it or intervening to stop it (Doc. 13). Finally, Bingham contends that PA-C B. McCurdy and the Clinical Director at USP-Pollock in August 2010 denied him medical care for his serious medical needs after the assault (Doc. 13).

<p align="center">Law and Analysis</p>

Exhaustion

Defendant contends that the subject of Bingham's lawsuit is an assault which occurred on August 5, 2010 and subsequent medical

treatment, and that he exhausted those claims.

However, defendant argues that Bingham failed to exhaust his claims that correctional officers at USP-Pollock broke criminal laws by distributing illegal drugs and other contraband in USP-Pollock, and that correctional officers appointed inmate gang leaders, or "shot callers," to help run the prison. Defendant contends, in the alternative, that those claims state intentional torts, which fall under an exception to liability.

As a jurisdictional prerequisite to bringing a lawsuit under the Federal Tort Claims Act, a plaintiff is required to "first present [his or her] claim to the appropriate Federal agency...." 28 U.S.C. 2675(a). Congress instituted the presentation requirement to "ease court congestion and avoid making unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." Frantz v. United States, 29 F.3d 222, 224 (5th Cir.1994).

The purpose of the FTCA's notice-of-claim requirement "will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp., 764 F.3d 445, 449 (5th Cir. 2014), citing Rise, 630 F.2d 1068, 1071 (5th Cir. 1980). Accordingly, the Fifth Circuit has held that a notice of claim requirement is satisfied "if the claimant

(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." Pleasant, 764 F.3d at 449, citing Adams, 615 F.2d at 289. The Fifth Circuit has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims. Frantz, 29 F.3d at 224; Rise, 630 F.2d at 1071.

Bingham sets forth only non-specific allegations as to criminal behavior by corrections officers at USP-Pollock in his administrative complaint (Doc. 24, Ex. 1). The allegations in his amended complaint also fail to set forth specific incidents. In his amended complaint, Bingham alleges that Officers Beemon, Pennywell, Wilks, and other unnamed officers committed criminal offenses by distributing marijuana, heroin, and cocaine, and "racketeering" in tobacco, wireless devices, and other contraband, all of which created an unsafe environment and resulted in Bingham being victimized (Doc. 13). Bingham also contends that Captain Marquis and Captain Wingo delegated prison security measures to appointed inmate gang leaders known as "shot callers," gave immunity to the "shot callers," and allowed gangs to become more powerful, creating an unsafe environment and resulting in injury to Bingham (Doc. 13).

Bingham did not allege specific facts in his administrative claim which show what the specified officers did that amounted to

the criminal activity alleged in his lawsuit.[5]  Thus, Bingham's administrative claim did not provide sufficient facts to notify the BOP of the criminal behavior alleged in his complaint and enable the BOP to investigate the claims he subsequently alleged in his lawsuit, i.e., distribution of marijuana, heroin, cocaine, tobacco, wireless devices, and other contraband, and the appointment of inmate gang leaders to be "shot callers" within the prison.

Therefore, Bingham's claims of criminal activity by BOP officers are not exhausted and should be dismissed without prejudice.[6]

Negligent Failure to Protect Bingham

Bingham contends the officials at USP-Pollock failed to protect him from inmate Cmanuel Christopher, although they were aware Christopher posed a threat to Bingham before he stabbed Bingham.  Defendant contends Bingham's complaint falls within the discretionary exception to liability under the FTCA.

1.

The United States is a sovereign, and, as such, is immune from

---

[5] Bingham's complaints are likewise vague.  In his statement of undisputed fact, Bingham states only that Officers Wilks, Beemon, Weeks, Pennywell and others "propositioned [Bingham] to engage in corrupt acts" (Doc. 29), and does not specify who asked him to do what, when they asked, and how he was injured thereby.

[6] Since Bingham failed to satisfy the exhaustion prerequisite to filing suit, it is not necessary to consider defendant's argument that an exception to liability is applicable.

suit unless it has expressly waived such immunity and consented to be sued. Hebert v. United States, 438 F.3d 483, 487 (5th Cir. 2006).

The FTCA allows the government to be held liable in tort for any negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred (state tort law). 28 U.S.C. § 1346(b). See U.S. v. Muniz, 374 U.S. 150, 152-153, 83 S.Ct. 1850 (1963).

The FTCA authorizes inmates to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee. Muniz, 374 U.S. at 150, 83 S.Ct. at 1851. Although "[t]he Government is not an insurer of the safety of a prisoner," Jones v. U.S., 534 F.2d 53, 54 (5th Cir. 1976), cert. denied, 429 U.S. 978, 97 S.Ct. 487 (1976), prison officials have a duty of "ordinary diligence to keep prisoners safe from harm," 18 U.S.C. § 4042; Cowart v. United States, 617 F.2d 112, 116 (5th Cir.), cert. den., 449 U.S. 903, 101 S.Ct. 275 (1980), quoting Jones, 534 F.2d at 54. A prisoner has the right to bring a cause of action under the FTCA for a breach of the duty prescribed by Section 4042. Muniz, 374 U.S. at 164-65, 83 S.Ct. 1850. Also,

<u>McKinney v. U.S</u>, 950 F.Supp.2d 923 (N.D.Tex. 2013).

In order to recover, a plaintiff must show that the Government was negligent in the exercise of its responsibilities. <u>Jones</u>, 534 F.2d at 54. In this case, Louisiana law controls because the incident occurred there.

Articles 2315 and 2316 of the Louisiana Civil Code provide that every person is responsible for damages caused by his fault or negligence. <u>Bursztajn v. U.S.</u>, 367 F.3d 485, 489 (5th Cir. 2004), citing <u>Pitre v. Louisiana Tech Univ.</u>, 95-1466 (La. 5/10/96), 673 So.2d 585, 589, cert. den., 519 U.S. 1007, 117 S.Ct. 509 (1996). The relevant inquiries are:

> (1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?
> (2) What, if any, duties were owed by the respective parties?
> (3) Whether the requisite duties were breached?
> (4) Was the risk, and the harm caused, within the scope of protection afforded by the duty breached?
> (5) Were actual damages sustained?

If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable. <u>Bursztajn</u>, 367 F.3d at 489, citing <u>Pitre</u>, 673 So.2d at 589-90.

2.

There are exceptions to the waiver of sovereign immunity in the FTCA. See 28 U.S.C. § 2680(a)-(n). The discretionary-function exception, codified in 28 U.S.C. § 2680(a), provides that the United States has not consented to suit where the claim is "based upon the exercise or performance or the failure to exercise or

perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." § 2680(a); Morales v. U.S., 371 Fed.Appx. 528, 531 (5th Cir. 2010), citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267 (1991).  The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. Morales, 371 Fed.Appx. at 531, citing Gaubert, 499 U.S. at 323, 111 S.Ct. 1267.  Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exception. Rosebush v. United States, 119 F.3d 438, 440 (6th Cir. 1997).

The discretionary function exception does not apply if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  There is no element of judgment or choice if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow; the employee has no rightful option but to adhere to the directive. Berkovitz v. U.S., 486 U.S. 531, 536, 547, 108 S.Ct. 1954, 1958-1959 (1988).  Moreover, if a statute, regulation, or agency guideline allows the employee discretion, there is a strong presumption that a discretionary act authorized by the regulation

involves consideration of the same policies which led to the promulgation of the regulations.  <u>Gaubert</u>, 499 U.S. at 324, 111 S.Ct. 1267.

In other words, the Government needs to establish that there was "room for choice" in making the allegedly negligent decision. If a "federal statute, regulation or policy" specifically prescribes a course of action for the federal employee to follow, the employee has no choice but to adhere to the directive.  If the Government can establish that the challenged act involved an element of judgment, step two of the test is met and the discretionary-function exception will apply only if that judgment is of the kind that the exception was designed to shield.  <u>Ashford v. U.S.</u>, 463 Fed.Appx. 387, 391 (5th Cir. 2012); <u>Ashford v. U.S.</u>, 511 F.3d 501, 504 (5th Cir. 2007).

<center>3.</center>

Bingham contends that Correctional Officer Thompson and an unknown SIS officer warned him that an attack on him was imminent and, in about August 2012, Christopher attacked Bingham.  According to Bingham, after the assault was stopped, Bingham was separated from Christopher for a few hours, then returned to general population, where he was immediately confronted again by Christopher.  Bingham contends Christopher followed him into his cell and stabbed him multiple times with a knife.

The Federal Bureau of Prisons is required to provide for the

safekeeping, care, and subsistence of all federal prisoners pursuant to 28 U.S.C. § 4042, but Section 4042 does not indicate the manner in which the duty must be fulfilled, McKinney v. United States, 950 F.Supp.2d 923, 567 (N.D.Tex. 2010), aff'd, 584 Fed.Appx. 229 (2014), and BOP officials generally have broad discretion in fulfilling this statutory obligation. Ashford, 463 Fed.Appx. at 391; Spotts, 613 F.3d 559, 567 (5th Cir. 2010).

Defendant contends that 28 C.F.R. § 541.23[7] states that an inmate may be placed in administrative detention status (in the SHU) for his safety. Defendant argues that the word "may" gives prison officials discretion to place inmates in administrative detention.

Bingham does not contend that he told the corrections officers that he feared for his safety or asked to be placed in administrative detention for protection, and the officers refused it. Instead, Bingham contends that corrections officers were aware he was in danger because two of them had previously warned him about an imminent attack and he had been assaulted by Christopher earlier that day (Doc. 13). Bingham also contends that, after Christopher assaulted him the first time, the correctional officers left Christopher undisturbed in general population and took Bingham

---

[7] Defendant also cites Program Statement 5270.08 in support of its argument. However, the defendant did not provide the court with a copy of that policy and the undersigned has not found it anywhere.

into custody for a few hours, then returned Bingham to general population (Doc. 13). Bingham contends that, as soon as he was returned to general population, Christopher attacked him again and Bingham received several stab wounds; one officer watched and did not immediately stop the attack (Docs. 13, 29). Bingham shows that, when Christopher attacked him with a knife, Bingham picked up a chair to try to defend himself; Bingham contends his wounds were caused by a knife and not a chair[8] (Docs. 13, 29). Thus, Bingham contends the officers failed in their duty to prevent the assaults and to intervene to stop the second assault.

Defendant has not alleged any policies, either discretionary or mandatory, with regard to the procedures at USP-Pollock that officers are supposed to follow when an inmate assaults another inmate or when inmates are found fighting.[9] Defendant only states

---

[8] Defendant contends in his pleadings that Christopher attacked Bingham with a chair. Bingham contends Christopher stabbed him multiple times with a knife, and that Bingham picked up a chair to defend himself with. The incident report dated August 9, 2010, four days after the attack, does not mention a knife or a chair, but states, "Bingham only used his fist in the altercation" (Doc. 29, Ex. p. 54/55). The incident report was revised on June 27, 2011, adding several statements including that Christopher struck Bingham with a chair (Doc. 29, Ex. p. 55/55). Being struck with a chair and a fist does not appear to account for the puncture wounds.

[9] The procedures employed appear to vary from prison to prison. Apparently, some prison's procedures give certain officers discretion in certain situations, while other prisons do not. See Morales v. U.S., 371 Fed.Appx. 528, 533-534 (5th Cir. 2010), discussing Ashford v. U.S., 511 F.3d 501, 503 (5th Cir. 2007).

14

is within an officer's discretion to place an inmate in administrative detention for protection. It is noted that an assault by an inmate is in the "greatest severity level" of prohibited acts, and "fighting" is in the "high severity level" of prohibited acts. 28 C.F.R. 541.3 (101) and (201). However, the defendant only cites general regulations concerning reasons to place inmates in administrative detention, 28 C.F.R. §§ 541.27, 541.28, and does not set forth the *procedures* in place at USP-Pollock which individual officers are supposed to follow when confronted with an inmate assault or fight. Therefore, defendant has not carried its burden of showing that the discretionary exception to liability applies in this instance.

There are genuine issues of material fact as to the extent of individual officers' discretion, under USP-Pollock procedures, with regard to what the officers are supposed to do when an inmate assaults another inmate or when inmates fight, defendant's motion for summary judgment should be denied as to Bingham's claims that the correctional officers were negligent with regard to Bingham's safety.

Medical Care Claim

Bingham contends the correctional officers intentionally or negligently denied him medical care for his stab wounds and mental

health needs after Christopher assaulted him the second time.[10]

Bingham submitted records which show that, after the second assault, the unit counselor, D. Lair, wrote that Bingham had blood on him and in his cell (Doc. 29, p. 27/55). Senior Officer D. Prater wrote that Bingham had received "several puncture wounds" (Doc. 29, p. 28/55). Bingham's medical record, by RN Keith Dufour, shows that Bingham had "a superficial abrasion to his right palm, a shallow laceration to the top of the left occipital area, a shallow laceration to the left cheek, a shallow laceration to the left deltoid, multiple small superficial abrasions to the left side of the back, and a shallow laceration to the right axillary region" (Doc. 20, p. 12/151). RN Dufour further noted that the bleeding in all wound areas was controlled, the wounds were cleaned, and bandages were applied (Doc. 20, p. 12/151).

First, Bingham and defendant dispute whether Bingham was injured with a chair, a fist, or a knife. As discussed above, the evidence appears to show that Bingham sustained some puncture wounds and it seems unlikely they were caused by a chair or a fist. In any event, this issue does not appear to be very relevant.

Second, the prison records in evidence show the assault occurred on August 5, 2012 at 3:42 p.m. (Doc. 20, Ex. pp. 1-9, 13-15/151), Bingham's picture was taken at 4 p.m., and Bingham was

---

[10] Bingham does not allege that the medical care provider was negligent in treating him.

16

seen and treated in the infirmary at 16:10, or 4:10 p.m., by R.N. Dufour (Doc. 20, Ex. pp. 11-12/151). Since the evidence shows that Bingham received medical treatment for his physical injuries soon after the assault took place, this claim is meritless (Doc. 20).

Bingham also shows in his affidavit that he was denied mental health treatment at USP-Pollock after the assault (Doc. 29). Bingham contends he was transferred to FCI-Coleman in Florida after the assault and began receiving mental health treatment there. Defendant shows that Bingham was seen by a staff psychologist on August 31, 2010, while he was in the SHU at USP-Pollock, and he did not report any psychological concerns or request psychology services (Doc. 20, Ex. pp. 20-21/151). Defendant also shows that, when Bingham was transferred to FCI Coleman, his intake screening showed no mental status items, no programs or treatment were recommended, and Bingham reported that he had no interest in participating in any programs or treatment (Doc. 20, p. 23/151).

Since defendant has shown that Bingham rejected two opportunities for mental health care after the assault, Bingham's claim that he was denied mental health care is also meritless.

Therefore, Bingham's claim that he did not receive medical or mental health care after the assault is meritless and defendant's motion for summary judgment should be granted on this claim.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that

defendant's motion for summary judgment (Doc. 24) be GRANTED as to Bingham's claims of criminal activity by BOP officers and that those claims be DISMISSED WITHOUT PREJUDICE due to lack of exhaustion.

IT IS RECOMMENDED that defendant's motion for summary judgment (Doc. 24) be DENIED as to Bingham's claims that correctional officers at USP-Pollock were negligent with regard to Bingham's safety.

IT IS RECOMMENDED that defendant's motion for summary judgment (Doc. 24) be GRANTED as to Bingham's claim that he did not receive medical or mental health care after the assault and that this claim be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of March 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE